264

The State of Ohio, Appellee, v. Haynes, Appellant.

(No. 70-353—Decided March 17, 1971.)

*Mr. James V. Barbuto*, prosecuting attorney, and *Mr. Stephan M. Gabalac*, for appellee.
*Mr. James R. Willis*, for appellant.

O'NEILL, C. J.   Appellant basically raises two issues in this case.

First, he contends that the affidavit for the search warrant did not set forth any grounds to show that the information furnished by the informer was reliable.

The affidavit in the present case recited that, on three separate, designated occasions over a three-week period, a named informant purchased marijuana on the premises and turned the marijuana over to police officers each time, and that analysis had proved it to be marijuana.   The affidavit also stated that one of the purchases was made from the appellant, that the informant had identified the appellant from photographs and that the affiant had personal knowledge as a police officer that appellant had been involved in narcotics violations.

It is now well established that the validity of a state search must be determined by federal standards.   Those standards are set forth basically in *Aguilar* v. *Texas* (1964), 378 U. S. 108; *United States* v. *Ventresca* (1965), 380 U. S. 102; *Spinelli* v. *United States* (1969), 393 U. S. 410.

Those cases, taken together, require that the issuing magistrate be given sufficient information to allow him, as a neutral and detached officer, to make an independent judgment that probable cause exists to warrant the belief that the contraband is on the premises sought to be searched.   Where the affidavit upon which the warrant is to be issued is based upon hearsay information obtained from an informant, such affidavit, if that is all that is before the magistrate, must show two things: First, the underlying circumstances which will enable the magistrate to independently judge the validity of the informant's conclusion that the narcotics were on the premises; second, sufficient information to show that the informant was credible or his information was reliable.   *Ventresca, supra,* points out, however, that in determining such matters the courts should not be hypertechnical, but should use common sense.

Although the Supreme Court of the United States has

established those general rules, it has not specifically set forth what information is required. However, in *Spinelli, supra*, the court did make a negative statement which throws some light on that question. In that case, at page 416, the court stated:

"Applying these principles to the present case, we first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function. Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that Aguilar's other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. *Cf. Jaben* v. *United States* (1965), 381 U. S. 214. In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

Thus, the affidavit in the *Spinelli* case set forth only that information which was obtained from an unnamed informer, with nothing to substantiate the way he obtained his information or to show his reliability.

It may be concluded from the above statement in *Spinelli* that if the affidavit sets forth that the informer obtained his information as a result of his own personal experience and sets forth reasons for the reliability of the

information, the affidavit would be sufficient to sustain a search warrant. The statement speaks of, but places much less emphasis on, the reliability of the informer himself.

The affidavit in the instant case is much more complete than that in either *Spinelli* or *Aguilar*. It recites that a named informant who had identified a picture of appellant had, on three separate occasions within a three-week period, purchased substances on the premises sought to be searched and that these substances were turned over to the police and, upon analysis, were shown to be marijuana. Thus, the information upon which the affiant based his affidavit for the search warrant was received from an individual who was reciting his own personal experiences and observations, rather than casual rumor, or the reputation of the appellant, or his mere belief that the contraband was there. Certainly, a statement of a direct sale to the informant of a substance found by an analysis to be marijuana would justify a magistrate in believing the informant had grounds for his statement that there was marijuana on the premises.

The second question is whether there is anything in the affidavit to indicate the credibility of the informant or the reliability of his information.

Reliability and credibility are nebulous matters. No exact rule can be laid down as a guideline for the determination of such questions. Each case must be judged upon its own merits.

Although the fact that the informant *has previously* supplied reliable information carries some weight, the determination of reliability or credibility can not be based solely upon that fact. To so hold would necessarily do away with informants since no one could ever qualify as a reliable informant the first time. In determining the reliability of the information, the magistrate must consider the facts presented to him, and if such facts would cause a reasonable man to believe there are grounds for believing that the contraband is on the premises sought to be searched, he is justified in believing in the reliability

of the informant. It must be remembered that the probable cause necessary to justify the issuance of a search warrant requires less facts than are necessary for conviction, and the amount and method of proof is less strict. *Jones* v. *United States* (1960), 362 U. S. 257.

In this type of case, the court is concerned with probable cause, not certainty, and this extends to the determination of the reliability of the informer. It is not necessary to show uncontrovertible proof that the informer is reliable, but only that such information would cause a neutral and detached officer to believe there is sufficient substance to the statement to justify a search of the premises. Here, the magistrate was presented, not only with the name of the informer, but also with the facts that such informer had identified appellant's picture; that he had turned over to the police material which he stated he had purchased on the premises; and that an analysis of that material proved it to be marijuana. Further, affiant stated of his own knowledge that he knew the appellant, lessee of the premises, had engaged in narcotic law violations. When all the facts are considered, we find, as a matter of law, that there were reasonable grounds for the magistrate to accept the informant's statements as being reliable.

Therefore, the affidavit and the search warrant were valid.

This brings us to a consideration of the next question raised by appellant. It is his contention that the evidence in the present case does not substantiate a conviction for *possession* for sale.

The evidence in the instant case shows that, although the premises were rented by appellant, they had also been occupied by his girl friend and three other persons for some time. Appellant testified, without contradiction, that he had left the premises about a week prior to the search because of a fight with his girl friend and had been living with his parents during that time.

To convict one of *possession* for sale, the state must prove that the accused had (1) actual *possession* or *con-*

*trol* of the substance, (2) that the accused knew that the narcotic substances were in his *possession*, (3) that he knew the substances were narcotics, *State* v. *Dempsey* (1970), 22 Ohio St. 2d 219, and (4) that at the time he possessed said narcotic substance, he did so for the purpose and with the intent to sell that narcotic substance. For the definition of "sale" see R. C. 3719.01 (H).* There is no evidence in the record of a sale.

The mere fact that one is the owner or lessee of premises upon which narcotics are found—where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessable to all tenants—is not, without further evidence, sufficient to establish *possession* in the owner or lessee.

When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotcis on the premises.

Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt.

In the instant case, there is no evidence which establishes that the accused had *possession* of the marijuana. The uncontroverted evidence shows that not only were these premises occupied by several persons, but also that the appellant had not occupied them for a week prior to the search. At the trial no testimony was presented supporting the information contained in the affidavit for the search warrant. The *only evidence* presented by the state on that question was that he was the lessee of the premises. Standing alone, that is not sufficient to establish his *posses-*

---

*R. C. 3719.01(H) reads as follows:

"(H) 'Sale' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal proprietor, agent, servant, or employee."

*sion* for sale of the narcotic, particularly where the premises are also occupied by other persons.

The judgment of the Court of Appeals is reversed and final judgment entered in favor of the appellant.

*Judgment reversed.*

SCHNEIDER, HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.